**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH L. PUNCHES, | ) | CASE NO. 3:12-CV-974 |
| | ) | |
| Plaintiff, | ) | JUDGE HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Ralph L. Punches ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On March 23, 2004, Plaintiff filed applications for POD, DIB and SSA, alleging a disability onset date of November 1, 2003.  (Tr. 47.)  After the applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  ALJ Richard D. Letts conducted a hearing on October 16, 2007.  (*Id.*)  In a November 27, 2007 decision, ALJ Letts found that Plaintiff was not

disabled.  (Tr. 47-53.)  Plaintiff did not appeal ALJ Letts's decision, and that decision became the Commissioner's final decision.

On November 14, 2008, Plaintiff filed an application for POD and DIB, and, on November 21, 2008, Plaintiff filed an application for SSI, alleging a disability onset date of November 28, 2007.  (Tr. 12.)  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ.  (*Id*.)  On June 22, 2010, ALJ Marlene W. Heiser held Plaintiff's hearing.  (*Id*.)  Plaintiff appeared, was represented by an attorney, and testified.  (*Id*.)  A vocational expert ("VE") also testified.  (*Id*.)  On August 27, 2010, ALJ Heiser found that Plaintiff was not disabled.  (Tr. 20.)  On February 23, 2012, the Appeals Council declined to review ALJ Heiser's decision, and that decision became the Commissioner's final decision.  (Tr. 1.)

On April 11, 2012, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On August 20, 2012, Plaintiff filed his Brief on the Merits.  (Doc. No. 14.)  On October 4, 2012, the Commissioner filed his Brief on the Merits.  (Doc. No. 15.)  On October 26, 2012, Plaintiff filed his Reply Brief.  (Doc. No. 18.)

Plaintiff asserts that ALJ Heiser failed to properly consider either the opinion of his treating physician or his obesity in determining his RFC, and that his earnings from his past relevant work were not sufficient to constitute substantial gainful activity.  The Commissioner responds that substantial evidence in the record supports ALJ Heiser's conclusions.

## II. EVIDENCE

### A. Prior ALJ Decision

In his November 2007 decision, ALJ Letts noted that on July 26, 2007, B.T. Onamusi, M.D. examined Plaintiff, who complained of of neck pain, left knee weakness, and use of a cane to ambulate. (Tr. 50.) Dr. Onamusi observed that Plaintiff weighed 350 pounds, walked with a normal, short-strided gait, and had mild difficulty moving from sitting to standing and getting onto the examining table, mostly as a result of his obesity. (Tr. 50-51.) ALJ Letts noted that Dr. Onamusi had diagnosed Plaintiff with chronic neck and back pain and morbid obesity, and had opined that Plaintiff could "function at light to moderate physical demand levels." (Tr. 51.) ALJ Letts determined that Plaintiff had the RFC "to meet the exertional demands of up to medium work as defined in 20 C.F.R. [§§] 404.1567 and 416.967. He has the nonexertional mental ability to perform no more than simple, repetitive tasks in a work setting that does not require strict production demands or high production quotas." (*Id*.)

### B. Personal and Vocational Evidence

Plaintiff was born on September 7, 1955, and was 52 years old on the alleged disability onset date. (Tr. 18.) He had at least a high school education and is able to communicate in English. (*Id*.) Plaintiff had past relevant work as a dishwasher, pizza deliveryman, taxi driver, parts deliveryman, and production assembler. (*Id*.)

### C. Medical Evidence[1]

#### 1. Plaintiff's Providers

On July 10, 2008, Plaintiff was examined by Midwest Community Health Associates ("MCHA") physician Stan Rowan, M.D. (Tr. 431.) The record of the examination reflects that Plaintiff was there "[t]o est[ablish] - abd[ominal] hernia, bad back, [left] should pain in cold or wet weather." (Tr. 431.) Dr. Rowan noted that Plaintiff was 69 inches tall and weighed 334 pounds. (*Id*.) Dr. Rowan diagnosed Plaintiff with back arthritis, an abdominal wall hernia, mild left shoulder pain and obesity. (*Id*.) He concluded that Plaintiff "[c]ould do light work[,] not much bending or lifting [greater than] 10 [pounds]." (*Id*.) Dr. Rowan instructed Plaintiff to obtain several blood tests, including a CBC and a lipid panel.

A message notation reflects that, on that same date, Plaintiff contacted MCHA and requested a statement from Dr. Rowan that Plaintiff "can't work for food stamps." (Tr. 433.) In response, Dr. Rowan wrote, "He can do light work." (*Id*.) Thereafter, Dr. Rowan completed a Basic Medical form for the Ohio Department of Job and Family Services, on which he indicated that he had last examined Plaintiff on July 10, 2008. (Tr. 432, 438.) Dr. Rowan reported Plaintiff's medical conditions as back arthritis, abdominal wall hernia, obesity and mild left shoulder pain. (Tr. 432.) He opined that Plaintiff could stand/walk for four hours in an eight-hour day, and for two hours without

---

[1] The administrative transcript contains records from numerous medical sources, and the ALJ determined that Plaintiff had multiple severe impairments. (Tr. 14.) However, Plaintiff challenges the ALJ's conclusions regarding only the opinion of Plaintiff's primary care physician and his obesity. (Pl. Br.) Accordingly, this Report and Recommendation discusses the record evidence relevant to these arguments.

interruption; could frequently and occasionally lift six to ten pounds; was markedly limited in his ability to bend; was moderately limited in his ability to push/pull and reach; was not significantly limited in handling and repetitive foot movements; and was not limited in seeing, hearing and speaking. (Tr. 438.) He based his opinions on his "exam of 7/10/08." (*Id.*)

On July 11, 2008, Dr. Rowan completed a Physician's Report of Work Ability, in which he noted that Plaintiff could return to work with restrictions from July 10, 2008 to "indefinitely." (Tr. 434.) He opined that Plaintiff could continuously lift up to ten pounds and sit; could occasionally bend, twist/turn, reach below his knee, push/pull, stand/walk and operate foot pedals; and could never squat and kneel, or climb. (*Id.*)

A November 11, 2008 entry in MCHA's records reflects that Plaintiff did not undergo the lab tests ordered by Dr. Rowan. (Tr. 498.)

On May 11, 2009, Plaintiff reported to the emergency department at Community Hospital and Wellness Center in Bryan, Ohio ("Community Hospital"), complaining of pain and numbness in his left lower back, radiating into his left leg . (Tr. 486.) He was diagnosed with back pain with sciatica and hypertension, and discharged with instructions to follow up with Dr. Rowan on May 13, 2009. (Tr. 475, 486.) Plaintiff did not show up for his May 13, 2009 appointment with Dr. Rowan. (Tr. 496.)

On May 26, 2010, Plaintiff again sought treatment from the Community Hospital emergency department, complaining of vomiting and abdominal pain. (Tr. 591.) He was diagnosed with a partial small bowel obstruction and admitted until May 29, 2010. (Tr. 597, 618.) Records from his treatment reflect that he had a body mass index ("BMI") of 42.4 on a scale in which a BMI above 30 is considered obese. (Tr. 595.)

5

### 2. Agency Reports and Assessments

On April 10, 2009, Lamberto Diaz, M.D., a physician at MCHA, examined Plaintiff at the request of the state agency. (Tr. 445.)[2] Dr. Diaz noted that Plaintiff complained of back problems, and a history of back pain beginning in seventh grade. (*Id*.) Dr. Diaz reported that Plaintiff was 5' 11" tall, weighed 308 pounds and was "massively obese." (Tr. 446.) Dr. Diaz observed that Plaintiff had a full range of motion in his shoulders and extremities, that his back range of motion was "very limited" and that his gait was normal with no ambulatory aid. (*Id*.) Dr. Diaz diagnosed Plaintiff with chronic low back pain, mild osteoarthritis and morbid exogenous obesity. (Tr. 447.) He opined that Plaintiff's "lack of muscle tone and his morbid obesity" were contributing factors to his chronic low back pain, that Plaintiff had good strength in his lower extremities, and that Plaintiff's hearing, understanding, emotional and cognitive skills were intact. (*Id*.)

### D. Hearing Testimony

#### 1. Plaintiff's Testimony

During his June 22, 2010 administrative hearing, Plaintiff testified as follows:

He was unable to work because he could not walk or sit for very long. (Tr. 27.) He could walk and stand for about ten minutes, and could sit for about five minutes before needing to change position. (Tr. 27-28.) Plaintiff's doctor had instructed him not to lift anything heavier than ten pounds. (Tr. 28.)

Plaintiff experienced constant pain in his back, which was exacerbated by sitting,

---

[2] In addition to Dr. Diaz's report, there is a corresponding entry in Midwest's records of Plaintiff's treatment, in which the notation "SSD" appears. (Tr. 497.)

6

walking and the weather. (Tr. 28-29.) Over-the-counter medications lessened the pain, but did not entirely alleviate it. (Tr. 29.) Plaintiff rated his pain at about 7 out of 10. (*Id*.) He used a cane to walk. (*Id*.) A physician had prescribed the cane in 1986, although Plaintiff could not recall what type of physician. (Tr. 30, 33.) Plaintiff lived with his adult daughter, and spent most of his time watching television. (Tr. 30.) He did not do any chores. (*Id*.) Plaintiff was not regularly seeing a physician for his back pain because he did not have any insurance. (Tr. 31-32.) He had applied for medicaid, but his application had been denied. (Tr. 34.)

### 2. VE Testimony

ALJ Heiser posed the following hypothetical to the VE:

> [A]ssume an individual of [Plaintiff's] age, education and past work experience. [T]he individual has the exertional capacity for medium work and . . . he's limited to simple repetitive tasks, in a work setting that does not require strict production demands or high production quotas.

(Tr. 36.) The VE opined that the hypothetical individual would be able to perform Plaintiff's past work as a pizza deliveryman. (Tr. 36-37.) Further, the VE concluded that the hypothetical individual would be able to perform work as an order picker or parts picker, a floor waxer, and a wall cleaner. (Tr. 37.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

8

404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff meets the insured status requirements of the Act through December 31, 2008.

2. Plaintiff has not engaged in substantial gainful activity since November 28, 2007, the alleged onset date.

3. Plaintiff has the following severe impairments: obesity, mild degenerative disc disease of the spine, a learning disorder and borderline intellectual functioning.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c). In addition, he is limited to simple, repetitive tasks in a work setting that does not require strict production demands or high production quotas.

6. Plaintiff is capable of performing past relevant work as a pizza deliveryman. This work does not require performance of work-related activities precluded by Plaintiff's RFC.

7. Plaintiff has not been under a disability, as defined in the Act, from November 28, 2007 through the date of this decision.

(Tr. 14-19.) In addition to determining that Plaintiff could perform his past relevant work as a pizza deliveryman, the ALJ concluded, in the alternative, that Plaintiff could perform work as a stores laborer, floor waxer and wall cleaner. (Tr. 19.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Arguments

Plaintiff argues that ALJ Heiser's decision is not supported by substantial

evidence because the ALJ violated the treating physician rule and Social Security Ruling 02-1p.  Further, Plaintiff asserts that ALJ Heiser erred in concluding that he could perform his past relevant work as a pizza deliveryman.  The Commissioner argues that substantial evidence supports ALJ Heiser's decision.  Plaintiff's arguments are not well taken.

### 1. The Treating Physician Rule

It is well established that "[a]n ALJ must give the opinion of a treating source controlling weight if [s]he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).  The regulations define a "treating source" as "your own physician . . . who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 404.1502.  A nontreating source is "a physician . . . who has examined you but does not have, or did not have, an ongoing treatment relationship with you."  *Id*.

In her decision, ALJ Heiser noted that she had "considered the opinion of [Plaintiff's] primary care physician, Stan Rowan, M.D., . . . . He rendered this opinion after only a one-time examination for the sole purpose of telling the agency administering food stamps that [Plaintiff] could not work."  (Tr. 17.)  Plaintiff argues that, because he was Plaintiff's primary care physician, Dr. Rowan's opinion was entitled to controlling weight.  Plaintiff disputes the Commissioner's characterization of Plaintiff's treatment by Dr. Rowan as a "one time examining physician," and asserts that Dr.

11

Rowan treated Plaintiff "from July 10, 2008 to at least May 13, 2009." (Plaintiff's Reply Brief ("R. Br.") at 2.)

The record contradicts Plaintiff's argument that he had an ongoing treatment relationship with Dr. Rowan. Rather, the record reveals that Plaintiff was first examined by Dr. Rowan on July 10, 2008, and that Dr. Rowan based his opinions regarding Plaintiff's limitations on that single examination. (Tr. 432, 433, 434, 438.) Plaintiff was examined one other time at MCHA, but that examination was performed by Dr. Diaz at the request of the state agency. (Tr. 445-47.) Further, although Plaintiff was scheduled to see Dr. Rowan on May 13, 2009, he did not show up for the appointment. (Tr. 496.) Accordingly, the record reflects that Plaintiff was examined by Dr. Rowan on a single occasion, and, thus, Dr. Rowan's opinion was not entitled to any special deference. See Atterberry v. Sec'y of Health & Human Servs., 871 F.2d 567, 572 (6th Cir. 1989).[3] Accordingly, substantial evidence supports the ALJ's decision not to assign controlling weight to Dr. Rowan's opinion.[4]

---

[3] The Commissioner also argues that ALJ Heiser properly declined to grant controlling weight to Dr. Rowan's opinion because it was inconsistent with his examination findings. The ALJ, however, did not make this conclusion. It is well established that "the courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Berryhill v. Shalala, 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983) (citation omitted)).

[4] ALJ Heiser did not necessarily reject Dr. Rowan's opinion regarding Plaintiff's limitations, as she noted, "Dr. Rowan's findings are not materially different than the findings on the examinations before [ALJ Letts]. Therefore, I see no reason not to adopt the prior ALJ's [RFC]." (Tr. 17-18.) Plaintiff does not challenge ALJ Heiser's decision to adopt ALJ Letts's RFC. Nor does he argue that Dr. Rowan's conclusions were materially different than the

12

### 2. Plaintiff's Obesity

Plaintiff argues that ALJ Heiser violated Social Security Ruling 02-1p in two respects: first, by failing to consider, at Step Three of her analysis, whether his obesity medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"), and, second, by failing to account for his obesity in determining his RFC. The Commissioner argues that ALJ Heiser properly evaluated Plaintiff's obesity.

The Social Security Administration ("SSA") considers obesity to be a medically determinable impairment. S.S.R. 02-1p, Introduction, 2000 WL 628049, at *1 (S.S.A.). Although the Listings previously included obesity as an impairment, the SSA deleted it in 1999, and added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. *Id.* The SSA also recognizes that obesity may cause or contribute to mental impairments such as depression or the loss of mental clarity due to obesity-related sleep apnea. S.S.R. 02-1p, Policy Interpretation Question 2, 2000 WL 628049, at *3.

Plaintiff argues that ALJ Heiser erred by failing to specifically mention Social Security Ruling 02-1p in her analysis. But the ruling does not mandate a particular mode of analysis of obesity, as it states only that obesity, in combination with other impairments, "may" increase the severity of the other limitations. *Id*; *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006) ("It is a mischaracterization to

---

conclusions of Dr. Onamusi.

13

suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."). Nor does it require an ALJ to specifically reference the ruling in her analysis. Accordingly, Plaintiff's argument that ALJ Heiser violated Social Security Ruling 02-01p in analyzing his obesity lacks merit.

Moreover, ALJ Heiser's decision reflects that she considered Plaintiff's obesity at the relevant steps of the sequential analysis. An ALJ must compare the medical evidence with the requirements for impairments in the Listings when considering whether a claimant's impairments, either singly or in combination, meet or medically equal any impairments in the Listings, *Reynolds v. Comm'r of Soc. Sec.*, 414 F. App'x 411, 414 (6th Cir. 2011), and the ALJ must consider all of a claimant's impairments, severe and not severe, when assessing the claimant's RFC, *see* 20 C.F.R. § 404.1545(e). Here, there is no evidence that Plaintiff was assigned limitations based on his obesity. ALJ Heiser found Plaintiff's obesity to be a severe impairment based on his height, weight and BMI, and explained that Plaintiff's impairments, considered both singly and in combination, did not meet or medically equal the requirements of any of the impairments set forth in the Listings regarding disorders of the spine or mental disorders. (Tr. 14, 15.) Further, ALJ Heiser indicated that she considered Plaintiff's obesity in determining his RFC. (Tr. 15.) Plaintiff has not explained what evidence regarding obesity ALJ Heiser failed to consider and how that evidence supports his claims for disability. Accordingly, this assignment of error lacks merit.

### 3. Plaintiff's Ability to Perform His Past Relevant Work

Finally, Plaintiff argues that ALJ Heiser erred in concluding that Plaintiff could perform his past relevant work as a pizza deliveryman because the position did not

constitute substantial gainful activity, and because ALJ Heiser relied on a flawed RFC to determine that Plaintiff was capable of working in that position. The Commissioner responds that, regardless whether Plaintiff's past relevant work constituted substantial gainful activity, substantial evidence supports ALJ Heiser's alternative conclusion at Step Five that Plaintiff could perform other work.

As discussed above, ALJ Heiser did not err either in assessing Dr. Rowan's opinion or in considering Plaintiff's obesity. Thus, substantial evidence supports her determination of Plaintiff's RFC.[5] Further, even if ALJ Heiser did err in determining that Plaintiff's past work constituted substantial gainful activity,[6] Plaintiff does not otherwise challenge her alternative conclusion that he could perform work as a stores laborer, floor waxer and wall cleaner. Accordingly, Plaintiff's arguments on this point lack merit.

---

[5] To the extent Plaintiff raises other bases for arguing that there is insufficient evidence to support the RFC in this case, he fails to articulate specific arguments. Accordingly, these arguments are waived. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

[6] The record reflects that Plaintiff earned $168.75 as a pizza deliveryman in 1995, $1,402.30 in 1997, and $4,885.13 in 1999. (Tr. 230-31.) These earnings fall below the level for substantial gainful activity for each relevant year. *See* Substantial Gainful Activity, http://www.socialsecurity.gov/OACT/COLA/sga.html (last visited Nov. 15, 2012).

15

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: November 16, 2012

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).